**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Sanjeev Lath

   v.                                        Case No. 20-cv-1018-JL

PennyMac Loan Services, LLC


**REPORT AND RECOMMENDATION**

Pro se plaintiff Sanjeev Lath brings state-law claims relating to defendant PennyMac Loan Services's foreclosure on a condominium unit Lath used to own in Manchester, New Hampshire. PennyMac moves to dismiss (doc. no. 10) the Second Amended Complaint (doc. no. 8).[1]  For the reasons that follow, it is recommended that the district judge grant PennyMac's motion to dismiss and dismiss the Second Amended Complaint without leave to amend.


**Standard of Review**

In considering whether a complaint states a claim upon which relief can be granted, the court asks whether the

_____

[1] Lath entitled the now-operative complaint (doc. no. 8) as his "First Amended Complaint," but it is in fact his second amended complaint and the court refers to it as such.  See doc. 1 (initial complaint); doc. 1-4 (first amended complaint); doc. 8 (second amended complaint); see also doc. 7 (referring to doc. 1-4 as Lath's "Amended Complaint").

plaintiff has made allegations that are sufficient to render his entitlement to relief plausible.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).  The court accepts all well-pleaded facts as true and draws all reasonable inferences in the pleading party's favor.  Hamann v. Carpenter, 937 F.3d 86, 88 (1st Cir. 2019).  The court disregards conclusory allegations that simply parrot the applicable legal standard. Manning, 725 F.3d at 43.

## Background

A.  Allegations

In his Second Amended Complaint (doc. no. 8), Lath brings claims for unlawful eviction (Count 1); conversion (Count 2); breach of contract (Counts 3 and 4); breach of fiduciary duty of due diligence (Count 5); breach of implied covenant of good faith and fair dealing (Count 6); and unjust enrichment (Count 7).  Lath alleges that he owned a condominium unit in a building in Manchester, New Hampshire.  PennyMac held a mortgage secured by the unit.  Lath defaulted on the mortgage, leading PennyMac to hold a foreclosure auction for the unit in March 2018.  After a buyer backed out because of Lath's previous litigation, PennyMac won the auction with a bid of $37,422.36.  PennyMac recorded a foreclosure deed for the unit in November 2019.

Lath made offers to reinstate the mortgage in April and
July 2020, both of which PennyMac rejected.  PennyMac did not
provide a written eviction notice to Lath, who had stopped
residing at the unit before the foreclosure auction.  Lath also
left some of his personal belongings in the unit, and he alleges
that PennyMac agreed that he could collect his personal
belongings from the unit on August 28, 2020.  Lath arrived at
the unit on that day, but no one from PennyMac met him.  Lath
did not collect his personal belongings.  PennyMac sold the unit
to a third party on September 4, 2020.  The sale amount was for
$113,500.

B.  Prior Suit

In October 2018, prior to bringing this suit, Lath filed a
similar action in this court.   Lath v. PennyMac Loan Servs. LLC
("PennyMac I"), No. 18-cv-928-PB.  In that action, Lath alleged
various improprieties relating to the March 2018 foreclosure
auction.  The court ultimately ruled in PennyMac's favor on all
of Lath's claims and entered judgment against him.  Lath
appealed the judgment, and the case remains pending before the
First Circuit.  See PennyMac I, doc. 70.

**Discussion**

PennyMac moves to dismiss the Second Amended Complaint.  It

argues that the claims within the Second Amended Complaint are

barred, in different extents, by the doctrines of claim and

issue preclusion and that there are no claims stated upon which

relief can be granted.  Lath objects to dismissal.  PennyMac

filed a reply, and Lath filed a surreply.


A.    Counts 1, 5, and 6

PennyMac contends that Counts 1, 5, and 6, which raise

claims about the March 2018 foreclosure auction that was at

issue in PennyMac I are barred by the doctrine of claim

preclusion.  Under the federal standard,[2] "[c]laim preclusion

generally refers to the effect of a prior judgment in

foreclosing successive litigation of the very same claim,

whether or not relitigation of the claim raises the same issues

as the earlier suit."  New Hampshire v. Maine, 532 U.S. 742, 748

(2001).  For claim preclusion to apply, there must have been a

final judgment on the merits in a previous suit and a new suit

---

[2] PennyMac seeks claim preclusion based on the final
judgment in PennyMac I, which is a federal judgment.  The
preclusive effect of a federal judgment is determined by federal
common law.  Robb Evans & Assocs., LLC v. United States, 850
F.3d 24, 32 (1st Cir. 2017).

with sufficient identity between the causes of action and the

parties.  Silva v. City of New Bedford, 660 F.3d 76, 78 (1st

Cir. 2011).  "A 'cause of action' in this context includes 'all

rights of the plaintiff to remedies against the defendant with

respect to all or any part of the transaction, or series of

connected transactions, out of which the action arose.'"

Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 15 (1st Cir.

2010) (quoting United States v. Cunan, 156 F.3d 110, 114 (1st

Cir. 1998)).  The critical question is whether "the causes of

action arise out of a common nucleus of operative facts."  Id.

All three elements of claim preclusion are met as to Counts

1, 5, and 6.  A final judgment was entered in PennyMac I, and

the parties in this case and in PennyMac I are identical.[3]  The

causes of action at issue are also the same as to the claims

raised in Counts 1, 5, and 6.  These claims arise, in their

entirety, from the same nucleus of operative facts at issue in

PennyMac I, namely, Lath's default on his mortgage and

PennyMac's subsequent sale and purchase of the condominium unit

at the March 2018 foreclosure auction.

Specifically, Count 1 is a claim for unlawful eviction

---

[3] Lath's appeal of the final judgment in PennyMac I does not
undercut its preclusive effects.  See, e.g., In re Kane, 254
F.3d 325, 328 (1st Cir. 2001).

subsequent to the foreclosure auction.  In PennyMac I, Lath

attempted to file a remarkably similar claim, which the court

found would be futile.  See PennyMac I, doc. 38 at 5-9 (finding

that Lath's proposed claim would be futile because "PennyMac is

not Lath's landlord" so that "Lath cannot bring a claim for

breach of the covenant of quiet enjoyment against it.").  Lath

argues that the unlawful eviction claim he asserts in this case

is based on a different legal theory than the claim he attempted

to raise in PennyMac I, but claims arising from the same cause

of action as a prior action but based on different legal

theories are precluded nonetheless.  See Airframe Sys., 601 F.3d

at 15; Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 13 n.8 (1st

Cir. 2010) (noting that claim preclusion can bar a matter that

was not litigated in the prior action).  Because Count 1 arises

from the same facts as the claims brought in PennyMac I, it is

recommended that the district judge dismiss Count 1.

Counts 5 and 6 are also barred by the final judgment in

PennyMac I.  In Count 5, Lath alleges that PennyMac breached its

duty to exert every reasonable effort to obtain a fair and

reasonable price for the unit prior to or during the March 2018

foreclosure sale.  Similarly, in Count 6, Lath alleges that

PennyMac breached the implied covenant of good faith and fair

dealing within their mortgage agreement by "failing to realize

approximately $100,000.00 in value of the home during the" March

2018 foreclosure auction.  Doc. 8 ¶ 79.  Both claims arise from

the March 2018 foreclosure auction, which was the focal point of

Lath's allegations in PennyMac I.  The final judgment in

PennyMac I therefore precludes Lath from pursuing these claims

in this suit.  See Airframe Sys., 601 F.3d at 15.

For those reasons, it is recommended that the district

judge dismiss Counts 1, 5, and 6.


B.   Count 2

In Count 2, Lath alleges that PennyMac converted his

personal property by selling the unit to a third party in

September 2020 with some of his personal property still inside.

PennyMac argues that the claim is barred by the final judgment

in PennyMac I and that Lath fails to state a claim upon which

relief can be granted.

"An action for conversion is based on the defendant's

exercise of dominion or control over goods which is inconsistent

with the rights of the person entitled to immediate possession."

Rinden v. Hicks, 119 N.H. 811, 813 (1979); Pac. & Atl. Shippers,

Inc. v. Shier, 109 N.H. 551, 554 (1969).  Lath has failed to

plead facts to meet this standard because the issues decided in

PennyMac I dictate a finding that he abandoned the unit and any

7

personal property within.  The court found in PennyMac I that

"[i]t is undisputed that the unit was vacant after July 2017,

when the City prohibited occupancy" and that "[a]t no time did

PennyMac prohibit Lath from removing his belongings from the

unit, and he admittedly made no request to take possession of

the property after the locks were changed."  PennyMac I, doc. 68

at 7-8, 11.  Because of the rules of issue preclusion, Lath

cannot challenge those findings in this subsequent action.

    "Under ordinary rules of issue preclusion, an issue

'actually litigated and determined by a valid and final

judgment,' if 'essential' to the judgment, binds the same

parties in any subsequent action, 'whether on the same or a

different claim.'"  Kane, 254 F.3d at 328 (quoting Restatement

(Second) of Judgments (1982) § 27).  "The purpose of [the] issue

preclusion doctrine is to prevent a party from relitigating an

issue where there has been a full and fair litigation . . . ."

Id. at 329.

    Those elements are met as to the court's findings in

PennyMac I that Lath abandoned the unit and that he did not make

any attempt to retrieve his belongings prior to or within any

reasonable time period after the foreclosure sale.  Lath's

belated attempt to retrieve his personal property in August 2020

does not undo the earlier abandonment of it.  Because Lath

abandoned the property, Lath fails to state a claim for
conversion.  See Rinden, 119 N.H. at 813-14 ("There is no
conversion when a plaintiff has abandoned, or apparently
abandoned, his property before a defendant takes possession of
it.").  Accordingly, it is recommended that the district judge
dismiss Count 2.


    C.  Count 3

    In Count 3, Lath alleges that PennyMac breached its
mortgage agreement with him by failing to provide him with
surplus funds from the September 2020 sale of the unit from
PennyMac to the third party for $113,500.00.  PennyMac argues
that Lath does not have any right under the mortgage agreement
to receive income from the September 2020 sale.

    "A breach of contract occurs when there is a failure
without legal excuse to perform any promise which forms the
whole or part of a contract." Audette v. Cummings, 165 N.H. 763,
767 (2013).  Once a foreclosure sale is complete, the
mortgagor's interest in the foreclosed-on property is
extinguished.  E.g., Murray v. Bank of N.Y. Mellon, No. 15-CV-
475-SM, 2016 WL 1171014, at *2 (D.N.H. March 23, 2016).  Lath
has failed to allege non-conclusory facts from which it can be
reasonably inferred that PennyMac breached the mortgage contract

9

by selling the property to the third party without providing him

the value of the sale over the amount he had owed on the

mortgage prior to the foreclosure auction.  Here, the

foreclosure sale occurred in March 2018 and the foreclosure deed

was recorded on November 22, 2019.  The mortgage agreement,

which Lath attached to his Amended Complaint,[4] does not provide

for payments to Lath based on sales of the property subsequent

to foreclosure.

Although Lath may have been entitled to surplus proceeds

from the March 2018 foreclosure sale, there were none.  PennyMac

I at 15-16 ("[T]here is no genuine dispute of material fact

concerning the existence of a surplus from the foreclosure sale

. . . .").[5]  And, after the foreclosure sale, Lath's interest in

the property was extinguished.  Lath is not entitled to any

proceeds from the sale of a property in which he held no

interest at the time of the sale.  For those reasons, Count 3

should be dismissed.


   D.  Count 4

---

   [4] Doc. no. 8-3.
   [5] For the same reasons as discussed above with respect to
his conversion claim, Lath is precluded from contesting the core
findings of PennyMac I, which include the finding that there
were no surplus funds from the foreclosure sale.

For similar reasons, Lath's claim in Count 4 that PennyMac breached the mortgage agreement by failing to permit him to reinstate the mortgage after the foreclosure sale fails. Specifically, in Count 4, Lath alleges that he offered PennyMac $37,422.16 to pay off the outstanding balance of the mortgage in April 2020. PennyMac argues that the claim should be dismissed because Lath did not have any right to reinstate the mortgage after the foreclosure sale completed.

The mortgage agreement does not provide Lath with the ability to reinstate the mortgage after foreclosure proceedings have completed. Rather, it merely provides that the right to reinstatement continues "even after foreclosure proceedings are instituted." Doc. 8-3 at 5, ¶ 10. Once a foreclosure sale has occurred, however, the contract requires PennyMac to deliver "indefeasible" title to the buyer with the mortgagor's right of reinstatement or redemption extinguished. See id. at 6, ¶ 18.

In this case, foreclosure proceedings not only began, but completed, extinguishing Lath's right to reinstate or redeem the mortgage. The foreclosure sale occurred in March 2018 and the foreclosure deed was recorded in November 2019. Lath did not make his first offer for reinstatement or redemption until April 2020, well after his rights under the mortgage contract were extinguished by the foreclosure sale. Therefore, Count 4 should

11

be dismissed.[6]


    E.  <u>Count 7</u>

Lastly, in Count 7, Lath alleges that PennyMac was unjustly

enriched when it sold the unit at a foreclosure auction to

itself for an amount that did not allow him any surplus proceeds

and then subsequently sold the unit to a third party for a

larger amount.  PennyMac argues that unjust enrichment is

unavailable as a remedy under the circumstances of this case and

that the claim is precluded under the doctrine of claim

preclusion.

Unjust enrichment is unavailable as a remedy when a valid

contract covers the subject matter at issue.  <u>Axenics, Inc. v.</u>

<u>Turner Constr. Co.</u>, 164 N.H. 659, 669 (2013).  As already

---

[6] Consistent with the mortgage contract's terms, Lath also
lost any statutory right of redemption that he may have had
under New Hampshire law once the foreclosure proceedings
completed.  <u>See</u> RSA 479:18 ("All lands conveyed in mortgage may
be redeemed by the mortgagor, after the condition thereof is
broken, by the payment of all demands and the performance of all
things secured by the mortgage and the payment of all damages
and costs sustained and incurred by reason of the nonperformance
of its condition, or by a legal tender thereof, before
foreclosure."); <u>Barrows v. Boles</u>, 141 N.H. 382, 393 (1996) ("The
mortgagor does not have a right of redemption after foreclosure.
. . .  [The debtor] possessed neither a legal nor an equitable
interest in the property once the auctioneer's hammer fell and
the memorandum of sale was signed.").

discussed as to Count 3, the mortgage agreement covers the circumstances in which Lath would have been entitled to surplus proceeds from a foreclosure auction.  Because the issue is covered by a valid contract, unjust enrichment is unavailable. See id.

Moreover, the court found in PennyMac I that "the undisputed evidence shows that there was no surplus from the foreclosure sale."  PennyMac I, at 12-14.  And, as discussed above, the final judgment in PennyMac I precludes Lath from asserting claims arising from alleged misconduct during the March 2018 foreclosure sale.  See Airframe Sys., 601 F.3d at 15. Therefore, to the extent Lath alleges that PennyMac was unjustly enriched because it contrived to reduce the sale price at the foreclosure sale thereby preventing him from receiving surplus proceeds, such a claim is barred by the final judgment in PennyMac I, in which Lath failed to establish that misconduct occurred.  For those reasons, the court should dismiss Count 7 of Lath's Amended Complaint.

## Conclusion

For the foregoing reasons, it is recommended that the district judge grant PennyMac's motion to dismiss (doc. no. 10) and dismiss Lath's Second Amended Complaint (doc. no. 8).

Furthermore, given the fundamental nature of the defects in Lath's claims, as discussed above, there are no circumstances in which the defects can be cured.  Accordingly, it is recommended the district judge dismiss the complaint without leave to amend.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge


February 2, 2021

cc:   Sanjeev Lath, pro se
      Kevin P. Polansky, Esq.


14